# In the United States Court of Federal Claims

OFFICE OF SPECIAL MASTERS
No. 12-553V
Filed: May 25, 2017

```
* * * * * * * * * * * * * * * * * * * * * * * * *
NATHANIEL LADUE,                      *      Not For Publication
as the Parent and Natural Guardian of *
B.L., an infant,                      *
                                      *
                Petitioner,           *
        v.                            *      Interim Attorney's Fees and Costs;
                                      *      Respondent Does Not Object;
SECRETARY OF HEALTH                   *      Protracted Litigation; Travel Costs.
AND HUMAN SERVICES,                   *
                                      *
                Respondent.           *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

*Mark Sadaka, Mark T. Sadaka, LLC, Englewood, NJ, for petitioner.*
*Darryl Wishard, United States Department of Justice, Washington, DC, for respondent.*

## DECISION ON INTERIM ATTORNEY'S FEES AND COSTS[1]

**Roth,** Special Master:

On August 30, 2012, Nathaniel Ladue filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act" or "Program") on behalf of his minor child, B.L. Petitioner alleges that B.L. developed a seizure disorder after receiving human papillomavirus ("HPV") vaccinations on September 22, 2010, and November 24, 2010. *See* Petition ("Pet."), ECF No. 1. Petitioner further alleges that B.L.'s seizures were either caused-in-fact or significantly aggravated by the HPV vaccines. On May 19, 2017, petitioner's counsel filed a motion for interim attorneys' fees and costs pursuant to Section 15(e) of the Vaccine Act. After careful consideration, the undersigned has determined to **grant the request in part** for the reasons set forth below.

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, it will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002 (codified as amended at 44 U.S.C. § 3501 note (2012)). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to delete medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will delete such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (1986). Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

# I. Procedural History

This case was filed on August 30, 2012 and was initially assigned to Special Master Zane. ECF Nos. 1-2. B.L.'s medical records were filed on September 5, 2012. Pet. Ex. 1-2.2, ECF No. 5. The case was then reassigned to Special Masters Hastings. ECF No. 7. Petitioner filed additional medical records on December 3, 2012, as well as a Motion for Extension of Time until January 2, 2013, to file additional outstanding medical records. ECF Nos. 9, 10. This motion was not acted upon. On January 14, 2013, this case was reassigned to now-Chief Special Master Dorsey. ECF No. 11. The initial status conference was held on January 29, 2013; petitioner was ordered to file outstanding medical records and a statement of completion by February 28, 2013. ECF No. 12. Petitioner's outstanding medical records (Pet. Ex. 4.1-4.7) were filed on February 28, 2013, along with a status report which stated that petitioner had requested and was awaiting updated medical records from certain facilities. ECF Nos. 13-14. Petitioner's outstanding medical records (Pet. Ex. 5.1-6.9) and a Statement of Completion were filed on April 1, 2013. ECF Nos. 16-17.

Respondent filed his Rule 4(c) Report on May 23, 2013, stating that this case was not appropriate for compensation. ECF No. 18. A status conference was held on June 6, 2013; petitioner was ordered to file a status report by June 20, 2013, indicating whether B.L. had undergone genetic testing, and an expert report by August 5, 2013. ECF No. 23. Petitioner filed his status report on June 19, 2013, confirming that B.L. had not had any genetic testing. ECF No. 24. Petitioner also filed medical literature (Pet. Ex. 7). ECF No. 25. Petitioner requested and received three extensions of time in which to file his expert report. ECF Nos. 26-31. On February 3, 2014, petitioner filed a status report which stated that his expert, Dr. Kinsbourne, was in the process of authoring the expert report. ECF No. 35. A status conference was held on March 25, 2014. Petitioner was ordered to file his expert report by April 4, 2014, and outstanding medical records and a Statement of Completion by May 27, 2014. ECF No. 39.

Petitioner filed an expert report from Dr. Kinsbourne on April 4, 2014. Pet. Ex. 11, ECF No. 40. Respondent filed a status report on May 21, 2014, suggesting a deadline of September 5, 2014, for respondent's expert report. ECF No. 41. Petitioner filed outstanding medical records (Pet. Ex. 12-16) and a Statement of Completion on May 27, 2014, as well as a status report stating that the medical records were complete to the best of petitioner's knowledge. ECF Nos. 43-46. Petitioner filed his medical literature (Pet. Ex. 18-31) on June 5, 2014, which was later struck and refiled due to improper filing. ECF Nos. 47, 48. On August 27, 2014, respondent filed an expert report from Dr. Shinnar, along with supporting medical literature. Resp. Ex. E-AA, ECF Nos. 49-51.

A status conference was held on October 15, 2014, in which Chief Special Master Dorsey encouraged the parties to discuss an informal resolution to this matter. ECF No. 53. On November 10, 2014, petitioner filed a joint status report indicating that he had transmitted a settlement demand to respondent. ECF No. 54. On November 24, 2014, respondent filed a status report which stated that he had elected to proceed to a hearing in this matter, and requested a deadline of January 15, 2015, to file a supplemental expert report from Dr. Shinnar which addressed an alternative causation theory. ECF No. 56. Respondent filed his supplemental expert report (Pet. Ex. BB-CC) on December 30, 2014. ECF No. 58.

A status conference was held on February 3, 2015; respondent was ordered to file a supplemental expert report from Dr. Shinnar which more thoroughly addressed *Althen* prongs one and two by March 20, 2015. Petitioner was ordered to file a supplemental expert report from Dr. Kinsbourne forty-five days thereafter. ECF No. 60. Respondent filed a supplemental expert report from Dr. Shinnar and an amended Rule 4(c) Report on March 13, 2015. ECF No. 63. On April 27, 2015, petitioner filed a Motion for Extension of Time until May 27, 2015, to file his supplemental expert report. ECF No. 64. This motion was granted. ECF No. 65. On May 28, 2015, petitioner filed a Motion for Extension of Time until June 27, 2015, to file his supplemental expert report. ECF No. 66. Petitioner was given until June 29, 2015, to file his supplemental expert report. ECF No. 67. Petitioner filed a supplemental expert report from Dr. Kinsbourne (Pet. Ex. 32) on June 29, 2015. ECF No. 68. On August 26, 2015, Chief Special Master Dorsey issued an order which informed that the parties that the case would likely be reassigned to another special master, and encouraged the parties to revisit settlement discussions. ECF No. 69. Respondent filed a status report on September 14, 2015 which stated that he was not interested in exploring settlement in this case. ECF No. 70.

This case was reassigned to me on October 21, 2015. ECF No. 71. Following a status conference on November 3, 2015, the parties were ordered to file a joint status report proposing potential hearing dates. ECF No. 73. A two day entitlement hearing was set for November 7 and 8, 2016. Prehearing Order, ECF No. 76. Petitioner filed updated medical records (Pet. Ex. 33-34.3) on March 9 and 17, 2016. ECF Nos. 77, 78. On September 12, 2016, petitioner filed a Motion for Extension of Time until September 19, 2016, to file his pre-hearing brief. ECF No. 79. This motion was granted. Order (Non-PDF), issued Sep. 12, 2016. Petitioner filed his prehearing brief on September 19, 2016. ECF No. 81.

A status conference was held on September 20, 2016, in which petitioner's counsel advised that, due to a conflicting state court matter, he would be unable to attend the entitlement hearing as scheduled. The parties were ordered to file a joint status report suggesting potential hearing dates in February of 2017. Scheduling Order (Non-PDF), issued Sep. 20, 2016.

A two day entitlement hearing was set for February 27 and 28, 2017. Prehearing Order, ECF No. 83. Respondent filed his prehearing brief on January 9, 2017. ECF No. 84. A status conference was held on January 11, 2017, to discuss the testimony planned for the hearing. Petitioner was ordered to file witness affidavits by January 23, 2017. ECF No. 85. Petitioner filed his affidavit and the affidavit of Samantha Domangue, B.L.'s stepmother, on January 16, 2017. ECF No. 86. Petitioner filed supporting medical literature (Pet. Ex. 18-31) on January 19, 2017. ECF No. 90-91. The prehearing status conference was held on February 7, 2017. ECF No. 96. On February 13, 2017, both petitioner (Pet. Ex. 37-38) and respondent filed medical literature (Resp. Ex. C, I, R, W, X, Y, A, CC, EE, FF, GG). ECF Nos. 98-99, 102.

A two day entitlement hearing was held in Washington, D.C., on February 27 and 28, 2017. Following the hearing, petitioner was ordered to file the following by May 30, 2017: an affidavit clarifying references in the record to a family history of seizures; all medical records that can be secured prior to 2008 and since 1999; any and all testing that has been conducted on B.L.; all Individual Education Plans that have been prepared for B.L.; and an updated CV for Dr. Kinsbourne. ECF No. 104.

On May 19, 2017, petitioner filed a Motion for Attorneys' Fees and Costs ("Motion for Fees") requesting $74,984.06 in interim fees and $6,358.79 in interim costs, for a total of $81,342.85 in fees and costs. Motion, Exhibit A, at 34. Respondent filed a response ("Response") on May 22, 2017, indicating that while respondent "defers to the Special Master to determine whether or not petitioner has met the legal standard for an interim fees and costs award," respondent was otherwise "satisfied the statutory requirements for an award of attorneys' fees and costs" have been met. Response at 2, ECF No. 113. Petitioner filed a reply on May 22, 2017. ECF No. 114.

This matter is now ripe for decision.

## II.      Applicable Law

The Vaccine Act permits an award of reasonable attorneys' fees and costs. §15(e). Special masters have "wide discretion in determining the reasonableness" of attorneys' fees and costs. *Perreira v. Sec'y of HHS*, 27 Fed. Cl. 29, 34 (1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994); *see also Saxton ex rel. Saxton v. Sec'y of HHS*, 3 F.3d 1517, 1519 (Fed. Cir. 1993) ("Vaccine program special masters are also entitled to use their prior experience in reviewing fee applications.") For instance, it is within a special master's discretion to reduce fees *sua sponte*, without warning to petitioners. *Sabella v. Sec'y of HHS*, 86 Fed. Cl. 201, 208-09 (2009).

When considering motions for attorney fees and costs, the Court employs the lodestar method. *Avera v. Sec'y of HHS*, 515 F.3d 1343, 1349 (Fed. Cir. 2008); *see also Blanchard v. Bergeron*, 489 U.S. 87, 94 ("the initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonable expended on the litigation times a reasonable hourly rate." (internal citations omitted). That said, a special master is not required to conduct a "line-by-line" analysis of a fee request. *Broekelschen v. Sec'y of HHS*, 102 Fed. Cl. 719, 729 (2011). Additionally, a special master is "entitled to use…prior experience in reviewing fee applications," including experience with particular attorneys. *Riggins v. Sec'y of HHS*, 406 Fed. Appx. 479, 481 (Fed. Cir. 2011) (citing *Saxton*, 3 F.3d at 1521 (Fed. Cir. 1993)). While respondent does have the opportunity to object to the amount of fees requested, pursuant to the Vaccine Rules, when no justification or specific objection is proffered, her "representation carries very little weight." *Reyes v. Sec'y of HHS*, No. 14-953V, 2016 WL 2979785, at *1 (Fed. Cl. Spec. Mstr. Apr. 27, 2016) (specifically when the attorneys of record supply detailed time sheets and present a *complete* case).

The decision in *McCulloch* provides a framework for consideration of appropriate ranges for attorneys' fees based on the experience of a practicing attorney. *McCulloch v. Sec'y of HHS*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015) *motion for recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). According to *McCulloch*, if an attorney has been practicing for 20 or more years, reasonable rates for work performed from 2014 to 2015 range from approximately $350 to $425 per hour.[3] *Id.* If an attorney has 11 to 19 years of

---

[3] The OSM Attorneys' Forum Hourly Rate Fee Schedule for 2017 can be found on the Court of Federal Claims website, or at http://uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2017.pdf.

experience, $300 to $375 is proper. *Id.* An appropriate range for an attorney with 8 to 10 years of experience would be $275 to $350. *Id*. For 4 to 7 years of experience, $225 to $300 is sufficient. *Id.* If an attorney has fewer than 4 years of experience, he/she should receive between $150 and $225. *Id.*

*McCulloch* has been endorsed by all current special masters. Additionally, it is the basis for the fee schedule which is published on the United States Court of Federal Claims' website as a resource for petitioners' counsel. *See* Office of Special Masters – Attorneys' Forum Hourly Rate Fee Schedules, available at http://www.uscfc.uscourts.gov/node/2914 (last accessed May 23, 2017).

### III.      Discussion

Interim fees may be paid at the discretion of the special master. *See Avera v. Sec'y of HHS*, 515 F.3d 1343, 1352 (Fed. Cir. 2008) ("Interim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained.") Additionally, "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d, 1372 1375 (Fed. Cir. 2010).

This case has been pending for nearly five years. While an entitlement hearing has been held, this matter is not yet ripe for the issuance of a decision. Therefore, an award of interim fees and costs is appropriate so that counsel is not unduly financially burdened during protracted litigation.

A. Reasonable Attorneys' Fees

Petitioner has requested $74,984.06 in interim fees and $6,358.79 in interim costs, for a total of $81,342.85 in fees and costs. Motion, Exhibit A, at 34. Respondent has stated that, while he "defers to the Special Master to determine whether or not petitioner has met the legal standard for an interim fees and costs award," he was otherwise "satisfied the statutory requirements for an award of attorneys' fees and costs" have been met. Response at 2.

Mr. Sadaka practices in Englewood, NJ, which is located just minutes outside of Manhattan; therefore, forum rates apply. He has been practicing in the Vaccine Program for 12 years, and practicing law for 14 years.

Upon review of the records filed with petitioner's application, Mr. Sadaka billed for travel as follows: four hours as "travel from hearing" and six hours as "Travel to hearing plan/prepare for entitlement hearing." Motion for Fees at 29, 30. Based on the amount billed for these hours, it appears that Mr. Sadaka billed his full hourly rate for his travel time. While an attorney may bill for work performed while traveling, "special masters consistently award compensation for travel time at 50% of the billing rate in the Vaccine Program." *Hocraffer v. HHS*, No. 99-533V, 2011

WL 3705153, at *24. Therefore, these hours will be compensated at 50 percent of Mr. Sadaka's hourly rate,[4] and attorneys' fees will be **reduced by $1,881.90**.

Having reviewed the billing records, the amount of hours billed seems reasonable and I see no erroneous or duplicative billing. I therefore reduce the billing as set forth above.

B. Reasonable Costs

Petitioner has requested $6,358.79 in interim costs, including $2,000 in expert fees for Dr. Kinsbourne, $2,638.18 in costs associated with hearing travel, and $1,367.84 in costs associated with obtaining medical records. Motion, Exhibit A, at 33-34.

The undersigned notes that, for his trip to Washington, D.C., Mr. Sadaka purchased and billed for "flexible" train tickets, rather than standard train tickets. The undersigned acknowledges that purchasing flexible train tickets is more cost effective than paying a fee to change a train ticket. Additionally, the undersigned also notes that Mr. Sadaka billed for business class train tickets. While petitioner's travel costs will be reimbursed in full, the undersigned cautions Mr. Sadaka that, in the past, the Program has declined to compensate petitioners for first class airfare. *See McCulloch*, 2015 WL 5634323 at *22. One could reasonably assume that this policy would extend to train fare as well.

Additionally, Mr. Sadaka billed for $912.40 in hotel and travel costs for Dr. Kinsbourne, and $418.24 in meal costs for himself and Dr. Kinsbourne. The undersigned cautions Mr. Sadaka that, in the future, he should provide more detailed documentation to support high costs of meals over a two day period. Other special masters have declined to compensate for costs that were not adequately documented. *See Sabella,* 86 Fed. Cl. at *225-26; *Brown v. Sec'y of HHS*, No. 09-426V, 2012 WL 952263 (Feb. 29, 2012); *Stone v. Sec'y of HHS*, No. 04-1041V, 2010 WL 3790297 (Sep. 9, 2010).

Petitioner's costs appear to be reasonable; therefore, I see no need to reduce them.

## V.      Total Award Summary

For the reasons contained herein, **the undersigned awards a lump sum of $79,460.95 in the form of a check payable jointly to petitioner, Nathaniel Ladue, and petitioner's counsel, Mark Sadaka.**

The clerk of the court shall enter judgment in accordance herewith.[5]

---

[4] I have made no determination as to counsel's hourly rate in this matter; I merely conclude that the total sums requested seem reasonable and appropriate.

[5] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. *See* Vaccine Rule 11(a).

**IT IS SO ORDERED.**

<u>**s/Mindy Michaels Roth**</u>
Mindy Michaels Roth
Special Master
